Ed, Peace the Court. Your Honor, this is a case where we have a second amended complaint that clearly alleges facts which, if true, would show that the Dahlins were deprived of their Fourth Amendment rights. The first cause of action alleges that the Dahlins had these dogs that they that they would sell for commercial purposes, very valuable dogs. A veterinarian opined that the dogs were in great condition. None of the dogs were sick or unhealthy or any of that those things. In attempting to obtain a warrant, the Humane Society officer, Rosemary Frieborn, omitted probably the most important facts of all, which is what the expert said, what the veterinarian said. So much so, so problematic was Ms. Frieborn's omission that the District Attorney declined to prosecute the Dahlins and expressly stated, can you guys still hear me? Yes, you're frozen on the screen but we can still hear you so keep arguing. Okay, so the District Attorney opined that they believe that if the judge had been in receipt of those omitted facts, the judge would not have issued the warrant. And I think that's very important because it just shows that this is not just the Dahlins making this argument, other people who I think can give an idea of what a reasonable person would believe. You know, I know that what the VA says is not determinative, it's not their standard, but the fact they say that, I was unreasonable, or that a reasonable person, I should say that a reasonable person would think that that omission was material. The omission of the veterinarian who actually inspected the dogs, and I think that one thing that I probably should emphasize more in my pleadings is when the dogs were seized, there's no allegation that any of the dogs were sick or dead. The warrant said seized sick dogs, seized dead dogs, among other types of dogs. And notice that there is no allegation anywhere that any of the dogs that were seized actually were sick or dead. And the dogs were actually inspected by another veterinarian, but the veterinarian for the Humane Society of Sierra Foothills, and he didn't find anything wrong with the dogs. So all of this adds to the fact that Dr. Sheriff stated the dogs were all in good health, and Ms. Streborn omitted that because she probably suspected, if I include this information, Judge Panetti's not going to issue with that those additional facts. The Second Amendment complaint alleges that upon arrival to the property, there were no dogs in a sick or unhealthy condition. And remember, we're not at a summary judgment stage here, we're at the pleading stage. So what the Second Amendment complaint alleges must be accepted, that's true. So this is not rocket science, this is very simple. Because the statements in the Second Amendment complaint that all the dogs were in good condition must be accepted as true. There is no way that the complaint can be dismissed because there was no right to seize healthy dogs. There was no right to seize healthy dogs. So if the Second Amendment complaint did not make that in the Auburn Police Department could seize the dogs. But the Second Amendment complaint says very clearly multiple times throughout the Second Amendment complaint that all the dogs were healthy. And then the Second Amendment complaint also alleges that there were items that were taken that were not mentioned in the in the warrant, such as the $10,000 cash and jury. And I will also just because that was not needed to show their identity. You know, the medical records specifically said they could take medical records for dogs. So that's another issue. All of these issues were included in the Second Amendment complaint. And we believe that the judge should have liberally construed the complaint and made all reasonable inferences in favor of the appellate. And I think that there is a cornucopia, there are a plethora of allegations that if true, would support a cause of action, even if the complaint was not well written, is still included enough for any, you know, reasonable person to say, if these things are true, then the dogs are entitled to relief. We do there was really no limitations to what they, in many ways, what they could seize. Now, I don't I don't say that to say that is that they could seize healthy dogs, nothing in the warrants that they could seize healthy dogs. But it but it does just say just all sorts of things that made the warrant just to seem so broad to the point of a reasonable officer should have used his discretion and know or his or her discretion not to seize those items. And I cited case law in my reply brief that shows that officers do have discretion not to seize things that they know should not be seized, regardless of how broad the warrant is. So that's another issue. Could you address your claims against the city and the police department and the humane society? Under Monell, you have to show that there was some sort of policy that they had violating the constitution. What is the allegation that you've made of a policy that they had? The second amendment complaint, I'm trying to find where I mentioned it, but I believe that the second amendment complaint states specifically that they had a policy practice or procedure of violating people's rights. In fact, the second amendment complaint talks about the humane society, about how they seized other people's animals, some horses, and they actually, I believe, and I'm just trying to find it. I mean, I guess I'm not sure that even under Iqbal, I'm not sure it's enough just to have the bare statement that, you know, I think they have a policy without some allegation of some plausible claim of what the policy is, and defined at a more specific level than just there's a policy of violating people's rights. Your Honor, so the complaint actually does give specifics. It talks about some horses that were seized, and I'm trying to find exactly where it is, but it's mentioned in my reply brief. It may be in my opening brief, but it talks about three instances of unlawful takings by the humane society. However, it's our position that we went above and beyond what was required because there's case law that says at the pleading stage, all you need to do as a plaintiff is make the allegation because the plaintiffs are not in possession of the material and the information that the police department would have or that the defendants would have, so you just make the allegation. And then during discovery, you obtain the Monell evidence that you need. And if you're not able to, then at some point, if you don't obtain enough materials to show a policy or procedure or custom, then the other party can do some sort of motion to dismiss or summary judgment motion, but there's a case that I cited that specifically says that at the pleading stage, it would be unfair to require a plaintiff to know those things at that early stage to have to prove their case in the complaint, so to speak. So let's assume for the sake of argument that you just can't make a conclusion and you have to do more than that. What are you saying about the police department or the sheriff's office or whoever, what the municipal entities were talking about, what is their Monell policy that we're concerned about with the municipalities? Your honors, while the respondents are arguing, I'm sure that I'll be able to go specifically to that point of my brief, but I'm trying to find it right now. Well, it looks to me in your second amendment complaint that you're just talking about supervisory liability, which is not cognizable under Monell. You're saying you didn't discipline, you didn't do this. That's not, what is the policy that you're challenging? Well, we believe that the humane society as an entity has a practice and procedure of taking people's animals. I'm wondering about the city of Auburn here. Your honor, as I said, we believe that at this particular stage, we just have to make the allegation. What policy do you think there is? What do you challenge? We believe that there is a policy of violating fourth amendment rights by, you know, just being very, very cavalier about the, about fourth amendment rights, as was done in this particular case. I don't see that in your complaint, really. On the Monell issue, your honor? You make some generic allegations, but it's hard for me to discern what policy, custom, or practice you're actually challenging or alleging that the city of Auburn is engaged in. Okay. Like I said, your honor, I am going, may I reserve and come back to that in my rebuttal argument? Let me ask you one further question though. I'm not sure I quite understand fully your allegations against the veterinarian. It seems to me that his statements are the lynchpin of count one, and yet you're suing him for releasing confidential information when, as far as I can tell from your complaint, the veterinarian himself did nothing wrong, correct? We agree, your honor. The veterinarian himself did nothing wrong, but- Do you have a case that says that there's vicarious liability? Because I can't, I can't find a single case, and I may have not looked hard enough in California, where there's been liability under this section at all. So it's hard for me to determine the contours of, of the right under, under the statutory confidentiality provision in California. Well, in California, there is vicarious liability for an employer due to their employee's actions. And so we believe that Doar, Ashley Doar, and the other two assistants gave out confidential information in violation of the law. And their wrongdoing is accountable, or Dr. Sheriff is responsible. I don't know, generally, but I can't, this is a specific statutory provision. It's not just general supervisory liability. So in any event, I don't want to take any more of your time because I want you to have some time for a moment. So thank you. Thank you. And I think first up is the counsel for Rosenberg-Freeborn, is that right? That's right, Your Honor. Good morning. May it please the court, Ashish Sudhakaran of O'Melveny and Myers on behalf of the non-municipal defendants. I'll be sharing my time today with Mr. Skidmore, who's representing Dr. Sheriff, and Ms. Warner, who is representing the municipal defendants. Your Honor, the district court correctly dismissed all of plaintiff's section 1983 claims against the non-municipal defendants without granting leave to amend, and this court should affirm that decision. Counsel for the appellants repeatedly states that all of the allegations in the complaint should be taken as true. And if they're taken as true, the complaint states all of the claims that are listed in there sufficiently for the purposes of rule eight and the Iqbal and Toowoomba standards. That's not correct, Your Honor. This court is only required, and the district court is only required to accept all factual allegations as true and to draw only all reasonable inferences in favor of the non-moving party. It is not required to accept as true legal conclusions that are cast in the form of factual allegations. And at base, that is what the appellant's complaint is. It's nothing more than labels and conclusions. I thought it was pretty specific about the deception with regard to the search warrant and that what was left out was the statement of the, I guess we'll call him the treating physician, Dr. Sheriff, that the dogs were not in ill health. And I think there's a pretty good argument that that's enough to cast doubt, at least cast pretty strong doubt on whether this search warrant would have issued, isn't that pretty specific? Your Honor, that is a specific allegation. However, the non-municipal defense respectfully disagree that that is strong enough to state a claim for judicial deception. And it is true that the appellants hang their hat on, of their judicial deception claim on that particular omission, the statement, the alleged statement of Dr. Sheriff that the dogs he saw were always of good body weight and he never suspected animal cruelty. But the standard to state a judicial deception claim at the 12B6 stage is that the appellant needs to show that the warrant affidavit contained misrepresentations or omissions material to the finding of probable cause. And that Ms. Freeborn, and make a substantial showing that Ms. Freeborn made that omission deliberately or with reckless disregard of the truth. As to materiality, I mean, actually as to both, I mean, the district attorney filed a statement saying, you know, we're not prosecuting because this would get suppressed under Frank's, which is pretty extraordinary. And obviously we don't owe any deference to the DA's conclusion, but why isn't, why isn't what he said a reasonable way to view the evidence here? And if we view it that way, isn't that sufficient to state a claim? Your Honor, two points. It is true that the appellant state, the district attorney declined to prosecute. I would note that the court below did not take judicial notice of the district attorney's decline to prosecute. It only took notice of the actual search warrant and the affidavit of search warrant with respect to the question of why the DA's opinion was not considered reasonable. Your Honor, respectfully, I submit that all of the facts that have come out, both that are alleged in the appellant's complaints and that are, have been undisputed throughout this proceeding in the search warrant that was taken judicial notice of, as well as the affidavit. There are numerous uncontested facts that show that Rosemary Freeborn did not act with a reckless disregard of the truth. The other facts all lend credence to probable cause to search the Freeborn's property. And there are five groups of facts that this court should pay heed to. The first was that Rosemary Freeborn received a report of a possible puppy mill, which is illegal unless there's a license on file with the state being run on the Don's property, that the Auburn community services officer conducted a welfare check of the property and has serious doubts about Ms. Freeborn's truthfulness and suspected it was breeding stock being kept on the property, that the community services officer conducted a check for the license to run such a business on file and could find none. And the detailed declarations of the veterinary technicians who had both treated Ms. Freeborn's, sorry, the Dolan's dogs. As the district court below noted, all plaintiffs do is that they state Dr. Sheriff never thought the dogs were being abused or neglected, and that that was enough to undercut all the probable cause that is supported by the warrant. And asides from being mere speculation, the appellants do not otherwise explain why that statement would have led the magistrate to not issue the warrant. I would like to yield the remainder of my time to counsel for COVID evidence. Very good. We'll hear from the municipal defendants. You have to unmute. There you go. Um, the approval for the veterinarians are going to go next. Yes, please start over. Good morning, your honors. May it please the court. Lawrence E. Skidmore on behalf of appellee Dr. Tom Sheriff. And I want to thank and commend my associate Katrina Johnson for her laboring warrant, drafting the answering brief. As with the, as Mr. Sudhakarian mentioned in the courts of knowledge, this complaint is just filled with conclusions and assertions couched as factual arguments, but are nothing more than conclusionary. Appellant's claim against Dr. Sheriff is brought under California Business and Professions Code 4857. Where they allege that Dr. Sheriff's staff divulged confidential information to UPS driver, Scott Mutchner. Jurisdiction over this claim is, exists only on the basis of supplemental jurisdiction related to the federal questions before the other defendants. This appeal should be dismissed because the district court promptly found that the allegations of the complaint were not sufficiently pledged to allege that Dr. Sheriff's staff divulged confidential information in violation of section 4857. They seem to concede that, but we, what we don't have, the allegations of the complaint are that his assistants divulged the confidential information and he's vicariously liable. Well, your honor, can I answer that? The district court found that it was unclear, in fact, the appellants do not identify who divulged confidential information and where they have identified particular assistants who alleged to have divulged anything, that was their opinions that were solicited from, provided information, let's see, spoke to undamaged staff that Dr. Sheriff's clinic about. It seems pretty clear that the technicians told the UPS driver some information, otherwise, how did he know it? You know, how did he know the names of these people? So the technicians, it seems like there's enough there with regard to the technicians, except they're not the ones who are being sued. Correct. And there is nothing in the statute that applies vicarious liability to the technicians or to Dr. Sheriff from the technicians divulging of information. The statute is very specific as to the restrictions on a licensed veterinarian. And the legislature could have extended that, its prohibitions to veterinary technicians or assistants, but it chose not to. There's no case- But in the legislative history of the first one, they do reference the veterinarian or the clinic, which would seem, although the words aren't in the confidential privilege to everyone in the clinic. That may be part of the legislative history, Your Honor, but the statute is very specific as to licensed veterinarians. And had the intended legislature intended to extend the restrictions to veterinary technicians or assistants, the legislature could have seen fit to do that. And did you make that argument in your brief? Because you have a discussion of how the employees weren't acting within the scope of their employment, which I took to be presuming that if they had been acting within the scope of their employment, then there would be vicarious liability. So did you make the argument that there's no vicarious liability? We did, Your Honor. And we made that an argument because it's based upon the conclusory allegations that these employees were acting within the course and scope of their employment, but there's no allegations to back up those conclusory statements.  I'm sorry, my question was imprecise. I understand you made that argument. Did you make the argument that even when an employee acting within the scope of his employment divulges confidential veterinary information, there just is no, there can be no vicarious liability unless the, there can be no vicarious liability under the statute. Is that an argument you made? We did not make that specific argument, Your Honor. I would just pick it up on Judge Thomas's comments earlier with respect to Mr. Stratton. And with respect to, you know, vicarious liability, the allegations are simply conclusory that they're acting in the course and scope of their employment. And there's no allegations in the complaint that these employees were not, were doing this in furtherance of their employment, Dr. Sheriff, that this was for the clinic and not otherwise for their own purpose. And if you look at the cases in California, Lisa M. versus Henry Mayo Newhall Memorial Hospital, that an ultrasound technician was acting outside the course and scope of his employment because his actions were not foreseeable consequence of his contact as a technician. And there is no evidence or no allegation that the conduct of these assistants and technicians were foreseeable to Dr. Sheriff. The case of United States Legal Support versus Hopiani, 213 U.S. District Court, that also holds that conclusory allegations that employee acting in the course and scope of their employment were not sufficient under Twombly, which the parties involved agree. That's all the real, that's my time to Ms. Warner. I appreciate it. Thank you, Your Honors. Serena Warner on behalf of the City of Auburn and the officers. Because of the questions regarding Monell liability, I'll start there. Not only is there nothing pled in the second amended complaint, the Dollins have expressly conceded that the lack of facts in the second amended complaint in its opposition to the motion to dismiss. And that's in the record at 193. The heading of that section is entitled plaintiffs conceded that the SAC does not expressly allege showing a Monell violation. So they've conceded that it's insufficient, which means that this issue should be limited to whether the lower court abused its discretion and refused declining to allow them leave to amend. And the only amendment that was requested by the Dollins below was to amend to add that there could be an inference that there was a policy for violating the fourth amendment, so that would not be sufficient to allege facts demonstrating that policy and the issue with the SAC is not that the Dollins couldn't plead any specific facts because a lot of specific facts are pled in the record at 24 through 27, and that's the SAC at paragraphs 88 through 96, in which there are a number of instances involving the humane society that are specifically pled, none of which involves city involvement. So that was one of the issues that the lower court focused on, that there was no indication that the city had ever worked with the humane society in executing these deliberately indifferent to, in order to need to train their officers. Are you representing the individual police officers who were involved in the execution of the warrant? Okay, so can you address the question of the scope of the search and in particular, that the, or I guess the scope of the seizure, really, that the warrant directed the seizure of any animal found in a neglected or abused condition. And in fact, they seized lots of dogs that were not, that were healthy. That's two points to that. First, the warrant talked about seizing neglected or abused animals or animals that were kept in conditions that could subject the animals to further neglect. Also, what has not been responded to is the reliance on the officers, on Dr. Fritz, who was the veterinarian at the scene, his opinion that the animals were being neglected. Mr. Barbie stated in talking about the expert's opinion, the veterinarian's opinion in the warrant application as being the most important facts of all. The same goes here. The Dr. Fritz, the veterinarian authorized and indicated that the animals were being neglected and the officers are entitled to rely on that. We referenced the McClendon case, which is an eighth circuit case that indicates that an officer's reliance on veterinary experts is reasonable. In fact, the court says imminently reasonable, and that's a consistent with the Ninth Circuit's precedent that, I thought that the doctor at the scene didn't actually examine the animals. The SAC says that the officer saw all the animals and it notes his report thereafter saying that they were severely neglected. And I see my time is up. So unless there's anything further from the court, I'll conclude. Thank you. We'll hear a rebuttal. Mr. Barbie, you're muted. Addressing the issue that your honor, Chief Judge Thomas raised, in Oliveri versus Thompson, the court explained that it would be unfair to require plaintiffs to plead specific facts showing a municipality has a certain custom policy or practice because such information is within the control and custody of the municipality. A plaintiff would not be expected to know the facts necessary to prove custom policy or practice until obtaining discovery from the municipal defendant. Now, so that's our basis against the municipal defendants, but with regards to the HSSF, we're relying on that, but we're also relying on specific instances that we allege in the second amended complaint, specifically, there was a situation, 29 of Mike Carpenter's horses and three of his dogs were taken on October 4th, 2013, and a court ordered the return of all the seized animals. That's mentioned in the second amended complaint. There's another specific example of Mr. B, who apparently wanted to stay anonymous, stated that his hunting dogs were seized, and there's some other examples. I don't want to run out of time. I just want to also address the court's issue with regards to the veterinarian. So by his staff giving out that confidential information, which they didn't have to do, have the right to do because they weren't veterinarians and the dogs were not sick, he's like a survivor for that. Now, there's no case that says that though, right? Well, it's implied when you put the laws, the different laws and statutes together. You would have to predict how the California courts would interpret the statute in order to credit your theory, correct? Well, I don't think it's pretty clear that she, that he is responsible for their conduct as an employer, and so even though we might have this specific example, a precedent for this specific example, we have much precedent showing that an employer is reliable for the wrongful acts of their employees if they're working in the scope of their duties as an employee. Thank you, counsel. Your time has expired and thank you all for your arguments this morning. They've been very helpful to the court. The case will be submitted for decision and we will be in recess for the morning. Thank you. Thank you. This court for this session stands adjourned.
judges: Thomas, Restani, Miller